2000-NMSC-009

998 P.2d 176

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Danny A. CUNNINGHAM,
Defendant–Appellant.**

**No. 25,604.**

Supreme Court of New Mexico.

March 9, 2000.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Appellant.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

BACA, Justice.

{1} Danny A. Cunningham was convicted of deliberate-intent first-degree murder contrary to NMSA 1978, § 30–2–1(A)(1) (1994), and sentenced to life in prison. Cunningham appeals his conviction alleging (1) that the trial court committed fundamental error by failing to instruct the jury on the essential element of unlawfulness once Cunningham had raised the issue of self-defense, and (2) that there was insufficient evidence to prove beyond a reasonable doubt that he formed the mens rea required to sustain his deliberate-intent first-degree murder conviction. We conclude that there was no fundamental error and that there was sufficient evidence of deliberate intent to support the jury's verdict. Cunningham's conviction is therefore affirmed.

### I.

{2} In the early morning hours of September 15, 1996, Cunningham and Manuel Vasquez engaged in a shootout in the streets of Carlsbad. Mr. Vasquez was fatally wounded during the altercation and Cunningham was shot in the chest. Cunningham admitted firing numerous shots at Mr. Vasquez, but alleged he did so in self-defense.

{3} Cunningham and the State presented different accounts of the altercation. Cunningham, testifying in his own defense, stated that he was on his way to the river when he encountered a weaving vehicle that he did not recognize. Cunningham testified that only after the other vehicle had executed a U-turn, shined a spotlight in his face, and began shooting at him, did he recognize the driver of the other vehicle as Mr. Vasquez. According to Cunningham, Mr. Vasquez then rammed his truck, pinning his vehicle against a rock wall and a tree. Cunningham returned fire, first with his .22 caliber pistol and then with his .380 caliber pistol, emptying each in turn. He then fired one last

bullet from a .357 magnum revolver, hitting Mr. Vasquez in the head, killing him.

{4} Contrary to Cunningham's testimony, the State painted a picture of an ongoing feud between Cunningham and Mr. Vasquez. The State's first witness, Stacie Wallen, testified that she was with Mr. Vasquez a few months earlier when after a high speed chase Cunningham threatened to kill Mr. Vasquez, saying, "I'll kill you, I'll shoot you, I don't care." Cunningham maintained that he never threatened Mr. Vasquez and only "knew of him."

{5} The State also offered the testimony of Carlos Perez, who immediately before the altercation, saw two trucks following each other at a high rate of speed, nearly bumper to bumper. He identified the first truck as that owned by Mr. Vasquez but was unable to identify the second truck as that owned by Cunningham. The State suggested that this proved that Cunningham was chasing Mr. Vasquez immediately prior to the altercation.

{6} Another State witness, Jean Jones, testified that she looked out her bedroom window after the noise of vehicles colliding into each other and sound of gunfire woke her. She saw that two vehicles had crashed through her rock wall and stopped when they hit her pecan tree. She also testified that she saw a man get out of his truck and momentarily walk up to the other truck before returning to his vehicle and departing the scene. Cunningham, however, stated that he did not remember exiting his vehicle and that he departed as soon as he could. Cunningham could not explain why his .380 caliber handgun along with numerous shell casings were found on the ground outside of Mr. Vasquez' vehicle. Charlie Jones, husband of Jean Jones, testified that he heard a volley of approximately seven or eight shots before he headed down the stairs of their home. While on his way down the stairs, his wife told him that someone was getting out of the truck, and then he heard one other distinct shot. Based on this testimony, the State maintained that Cunningham was the aggressor in causing the altercation and that Cunningham had deliberately, and with premeditation fired the final fatal shot from the .357 magnum revolver once Mr. Vasquez was

immobilized. Therefore, the State argued that Cunningham was not entitled to acquittal based on his claim of self-defense.

{7} The jury was instructed on the elements of deliberate-intent first-degree murder pursuant to UJI 14–201 NMRA 1999.[1] The jury was also instructed on the elements of second-degree murder, voluntary manslaughter, and involuntary manslaughter. The jury also received a separate instruction premised on UJI 14–5171 NMRA 1999, the general self-defense instruction.[2] The jury returned a verdict finding Cunningham guilty of deliberate-intent murder, and the judge sentenced him to life in prison.

■ {8} Cunningham now maintains, relying on the reasoning in *State v. Parish,* 118 N.M. 39, 878 P.2d 988 (1994), that the jury instructions were fundamentally flawed by failing to include any reference to "unlawfulness" in the instruction on deliberate-intent murder.[3] However, Cunningham did not object to the jury instructions as given, and therefore we only review for fundamental error. *See State v. Acosta,* 1997–NMCA–035, 123 N.M. 273, 939 P.2d 1081 (reviewing for fundamental error, an issue not properly preserved and raised for the first time on appeal), *cert. granted,* 123 N.M. 215, 937 P.2d 76 (1997), *cert. quashed,* 124 N.M. 312, 950 P.2d 285 (1997). Additionally, Cunningham maintains that there was insufficient evidence to prove beyond a reasonable doubt that he formed the requisite mens rea required to sustain his deliberate-intent murder conviction. We review each of these claims in turn.

## II.

■ {9} Cunningham correctly asserts that unlawfulness is an element of deliberate-intent murder. Our deliberate-intent first-degree murder statute, NMSA 1978, § 30–2–1(A)(1) (1994), provides that murder is the "killing of one human being by another without lawful justification or excuse." It is presumed that any killing of another is unlawful unless that killing is justified or excused. *See State v. Noble,* 90 N.M. 360, 364, 563 P.2d 1153, 1157 (1977) ("Every killing of a person by another is presumed to be unlawful, and only when it can be shown to be excusable or justifiable will it be held otherwise."). Self-defense as a lawful justification to homicide is defined by NMSA 1978, § 30–2–7(A) (1963). It states that, "Homicide is

1. The jury instruction provided on deliberate-intent first-degree murder read:
   For you to find the defendant guilty of First Degree Murder by a Deliberate Killing, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
   {1} The defendant killed Manuel Vasquez;
   {2} The killing was with deliberate intention to take away the life of Manuel Vasquez;
   {3} This happened in New Mexico on or about the 15th day of September, 1996.
   A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

2. UJI 14–5171 on self-defense was given as follows:

Evidence has been presented that the defendant killed Manuel Vasquez in self-defense.
The killing is in self defense if:
   {1} There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of Manuel Vasquez' use of his vehicle to force Danny Cunningham's vehicle through a rock fence, pinning him there and firing a rifle at him; and
   {2} The defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed Manuel Vasquez because of that fear; and
   {3} A reasonable person in the same circumstances as the defendant would have acted as the defendant did.
The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self defense. If you have a reasonable doubt as to whether the defendant acted in self defense you must find the defendant not guilty.

3. We note that Cunningham also alleges error in the omission of unlawfulness in the remaining homicide charges, but because he was convicted of deliberate-intent first-degree murder we limit our discussion to that charge.

justifiable when committed ... in the necessary defense of his life, his family or his property, or in necessarily defending against any unlawful action directed against himself, his wife or family[.]" § 30–2–7(A). Cunningham presented evidence "sufficient to raise a reasonable doubt in the minds of the jury as to whether or not" he acted in self-defense. *Parish*, 118 N.M. at 42, 878 P.2d at 991 (quoting *State v. Martinez*, 95 N.M. 421, 423, 622 P.2d 1041, 1043 (1981)). In fact, the Use Note to UJI 14–5171 on self-defense provides that if the instruction is to be given, then the language "The defendant did not act in self defense" should be inserted into the essential elements section of the jury instructions. Here, the unlawfulness of Cunningham's behavior was at issue and therefore a reference to unlawfulness or self-defense should have been included in the elements section of the jury instructions. However, that does not end our inquiry. The issue before us is whether the district court committed fundamental error by omitting the element of unlawfulness from the elements instruction on deliberate-intent murder when the jury also received a separate proper instruction on self-defense.

### III.

{10}  The scope of appellate review is defined by Rule 12–216 NMRA 1999. Generally, this Rule limits appellate review to issues that were properly preserved by invoking the trial court's discretion. Rule 12–216 makes it clear that a formal objection is not required in order to preserve the question for review so long as a "ruling or decision by the district court was fairly invoked." Rule 12–216(A). The doctrine of fundamental error, embodied in Rule 12–216(B)(2), is an exception to the general rule requiring preservation of error. This Court outlined the appellate procedure under a claim of fundamental error in *State v. Clark*, stating, "To the extent alleged violations rise to the level of fundamental error, the question will be reviewed on appeal and, if fundamental error exists, a new trial will be ordered." 108 N.M. 288, 297, 772 P.2d 322, 331 (1989), *habeas corpus granted on other grounds, Clark v. Tansy*, 118 N.M. 486, 882 P.2d 527 (1994).

{11}  Here, Cunningham did not object to the instructions as tendered and he did not offer a curative instruction of his own. By not invoking the trial court's discretion with regard to the propriety of the jury instructions, Cunningham effectively waived appellate review of this issue. *See* Rule 12–216. However, errors in jury instructions have been reviewed for fundamental error in the past. *See State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (holding that it was fundamental error not to instruct the jury on unlawfulness); *see also State v. Acosta*, 1997–NMCA–035, ¶ 21, 123 N.M. 273, 939 P.2d 1081; *State v. Armijo*, 1999–NMCA–087, ¶ 6, 127 N.M. 594, 985 P.2d 764. Therefore, we review Cunningham's claims for fundamental error.

### A.

{12}  Fundamental error in the context of a jury instruction case was first examined in *State v. Garcia*, 19 N.M. 414, 143 P. 1012 (1914). In *Garcia*, the defendant did not object to the jury instructions, and accordingly, the Court examined the claim of error under the doctrine of fundamental error, stating:

> There exists in every court ... an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, while he may be precluded by the terms of the statute or the rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done.

*Id.* 19 N.M. at 421, 143 P. at 1014–15 (opinion on rehearing). Further, *Garcia* emphasized that this Court should "exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims ...." *Id.* This early case established important principles that provide the foundation for our analysis of Cunningham's claim.

{13}  More recent cases have provided additional articulations of fundamental error. "Error that is fundamental must be such

error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Garcia,* 46 N.M. 302, 309, 128 P.2d 459, 462 (1942). "Each case will of necessity, under such a rule, stand on its own merits." *Id.* "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Rodriguez,* 81 N.M. 503, 505, 469 P.2d 148, 150 (1970) (holding that the record did not suggest the indisputable innocence of the appellant, or that his conviction would shock the conscience). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca,* 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066 (citing *State v. Aguilar,* 117 N.M. 501, 507, 873 P.2d 247, 253 (1994)).

{14} Given these principles, we hold that fundamental error did not occur in this case. Our task is to determine whether "a reasonable juror would have been confused or misdirected" by the jury instruction. *Cf. Parish,* 118 N.M. at 42, 878 P.2d at 991. We do not believe that a reasonable juror would have been confused by the proffered jury instructions. Self-defense was the only claim at issue since Cunningham admitted firing numerous rounds at Mr. Vasquez. Testifying in his own defense, Cunningham only discussed the events in terms of his self-defense. The jury was then given a separate proper self-defense instruction as provided for in UJI 14–5171. The instruction clearly stated, "If you have a reasonable doubt as to whether the defendant acted in self defense you must find the defendant not guilty." Since Cunningham's claim of self-defense was the major issue at trial, and the jury was properly instructed on self-defense, we do not believe that a reasonable juror would have been confused by the jury instructions. The issue of self-defense was at the "foundation of the case" but, because the jury was properly instructed on and decided the issue

of self-defense, we do not believe that the omission from the elements section "[took] from the defendant a right which was essential to his defense." *Garcia,* 46 N.M. at 309, 128 P.2d at 462.

{15} This Court also addressed a claim of fundamental error in the context of a jury instruction case in *State v. Osborne,* 111 N.M. 654, 808 P.2d 624 (1991). *Osborne* held that it was fundamental error for a jury not to be instructed on the essential element of unlawfulness in the charge of criminal sexual contact of a minor under NMSA 1978, § 30–9–13 (Cum.Supp.1990). The *Osborne* Court focused on the issues that the jury was required to decide: "The instructions failed to require the jury to resolve the issue, raised in the evidence at trial . . . ." 111 N.M. at 663, 808 P.2d at 633. Unlike *Osborne,* where the jury was not provided with the opportunity to decide if the defendant's conduct was unlawful because they were not given the appropriate jury instruction, in this case, the jury was provided with a separate self-defense instruction that required them to consider whether Cunningham's killing of Mr. Vasquez was in self-defense. We are convinced that the jury, when presented with the evidence and the jury instructions, concluded that Cunningham was not entitled to acquittal based on his claim of self-defense. We note that Cunningham's version of the facts was different from the State's version, but we trust the jury properly weighed each version. *See State v. Motes,* 118 N.M. 727, 730, 885 P.2d 648, 651 (1994) (noting that determinations of intent were for the jury) (citing *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992)); *cf.* UJI 14–6006 NMRA 1999 (admonishing juries that they "are the sole judges of the facts in this case. It is your duty to determine the facts from the evidence produced here in court.") Furthermore, the evidence as given does not convince us that Cunningham's "innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *Rodriguez,* 81 N.M. at 505, 469 P.2d at 150.

**B.**

{16} Cunningham places great reliance on our holding in *State v. Parish,* 118 N.M.

39, 878 P.2d 988 (1994). He asserts that because this Court reversed in *Parish* when the elements instruction omitted a reference to self-defense or unlawfulness, a similar result is mandated here. Cunningham misinterprets. *Parish* and his reliance thereon is misplaced. *Parish* properly analyzed the jury instructions under a reversible error standard because the defendant in *Parish* not only objected to the proffered instructions, he also offered his own correct instructions. *Parish,* 118 N.M. at 41, 44, 878 P.2d at 990, 993. These objections were sufficient to preserve the error for our general appellate review under Rule 12–216. Cunningham, on the other hand, made no objection and did not offer any curative instruction, and thereby, essentially waived appeal on the jury instruction issue absent our review for fundamental error. Since *Parish* was properly decided under a reversible error standard, and not a fundamental error standard, it is not binding in this case.

{17} Furthermore, the factual distinction between *Parish* and this case mandate a different result. The primary difference is that in *Parish* there were two errors in the jury instructions while there is only one error in this case. In *Parish,* this Court found reversible error in jury instructions that failed to instruct the jury on the element of unlawfulness. This Court found a second error in the self-defense instruction because it failed to properly place the burden on the State to prove the defendant did not act in self-defense. *See Parish,* 118 N.M. at 46, 878 P.2d at 995 ("We base our reversal of the manslaughter conviction on the two jury instruction errors just discussed."). The Court stated that an additional instruction could not have cured the omission because "even if the voluntary manslaughter and self-defense instructions are considered together, they do not clearly convey to a reasonable juror that the claim of self-defense negates a specific element of voluntary manslaughter." *Id.* 118 N.M. at 44, 878 P.2d at 993. We believe that in this case, if the self-defense instruction is read in concert with the deliberate intent murder instruction, a reasonable juror would understand that an acquittal based on self-defense is inconsistent with a guilty verdict on first-degree deliberate-intent murder.

Therefore, we find *Parish* both factually and legally distinct from this case.

## C.

{18} We believe that this case is analogous to *State v. Armijo,* 1999–NMCA–087, 127 N.M. 594, 985 P.2d 764. *Armijo* discussed the omission of a reference to self-defense or unlawfulness from the elements instruction for aggravated battery when a separate instruction that properly allocated the burden of disproving self-defense was provided. 1999–NMCA–087, ¶ 11, 127 N.M. 594, 985 P.2d 764. Thus, *Armijo* is quite similar to this case, in that faced with only one error, the defendant claimed that there was fundamental error. The *Armijo* Court did not highlight the analytical distinction between an evaluation based on the reversible error standard as applied in *Parish* and the fundamental error standard, and thus felt it necessary to factually distinguish *Parish.* *See Armijo,* 1999–NMCA–087, ¶¶ 15–16, 127 N.M. 594, 985 P.2d 764. We believe that the analysis under a fundamental error standard is distinct from the analysis under a reversible error standard. To claim otherwise would eliminate the preservation of error requirement of our appellate jurisprudence. It would also compromise the intent embodied in Rule 12–216, which makes fundamental error an exception to the general rule requiring preservation of error.

{19} Having factually distinguished *Parish,* the *Armijo* Court held that, "it is sufficient if it [the unlawfulness or self-defense element] is in the defense instruction, even if not in the elements instruction, provided that no other instruction causes the defense instruction to be confusing or meaningless." *Armijo,* 1999–NMCA–087, ¶ 26, 127 N.M. 594, 985 P.2d 764. As discussed below, we agree with the proposition that a subsequent correct instruction can correct a deficient elements instruction and we agree with the result reached by the Court of Appeals in *Armijo* under the fundamental error standard.

## D.

{20} In *State v. Acosta,* 1997–NMCA–035, 123 N.M. 273, 939 P.2d 1081, the Court

of Appeals faced the same two errors at issue in *Parish*. However, the defendant in *Acosta*, like Cunningham, did not preserve the error for review and thus the Court of Appeals properly reviewed only for fundamental error. The *Acosta* Court held that it was fundamental error when the jury instructions omitted the element of unlawfulness once the issue of self-defense had been raised and also when the jury instructions failed to properly allocate the burden of disproving self-defense to the State. 1997–NMCA–035, ¶ 21, 123 N.M. 273, 939 P.2d 1081. In holding that the district court committed a fundamental error that could not be corrected, the *Acosta* court said, "Because this error in the essential-elements instruction was clear and unambiguous, it could not be cured by the presence of separate instructions for self-defense and defense of another." *Acosta*, 1997–NMCA–035, ¶ 18, 123 N.M. 273, 939 P.2d 1081 (citing *Parish*, 118 N.M. at 44, 878 P.2d at 993). We agree with the Court of Appeals that the particular error at issue in *Acosta* could not have been corrected by the subsequent self-defense instruction, because the self-defense instruction was also flawed in failing to properly place the burden on the State. *See Acosta*, 1997–NMCA–035, ¶ 21, 123 N.M. 273, 939 P.2d 1081. However, here, we believe that the error in the deliberate-intent murder instruction was corrected by the subsequent proper self-defense instruction.

{21} In this regard, we recognize that we have previously stated, "that the failure to include an essential element in the elements instruction can *never* be corrected by including the concept elsewhere in the instructions." *State v. Clifford*, 117 N.M. 508, 511, 873 P.2d 254, 257 (1994) (emphasis added) (citing *State v. Bunce*, 116 N.M. 284, 861 P.2d 965 (1993)); *accord Acosta*, 1997–NMCA–035, ¶ 30, 123 N.M. 273, 939 P.2d 1081 (Hartz, C.J., dissenting). We note that *Clifford* was decided under a reversible error standard and thus has limited applicability to this case. *Clifford*, 117 N.M. at 511–12, 873 P.2d at 257–58. Furthermore, the analysis under a reversible error standard is decidedly different than the analysis under a fundamental error standard. The main analytical distinction between a fundamental error analysis and a reversible error analysis is the level of scrutiny afforded to claims of error. Parties alleging fundamental error must demonstrate the existence of circumstances that "shock the conscience" or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked. *Rodriguez*, 81 N.M. at 505, 469 P.2d at 150; *see Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066. Parties who have properly preserved an alleged error for appeal are afforded a much less onerous level of scrutiny under a reversible error standard as provided in *Parish*. Therefore, considering the heightened scrutiny of a fundamental error analysis, we hold that in a fundamental error analysis jury instructions should be considered as a whole and a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element. Therefore, *Clifford* has no applicability when evaluating a claim of error under the rubric of fundamental error. To the extent that *Clifford* can operate within the confines of the analysis contained in *Parish* under a reversible error standard, the language from *Clifford* is retained, however, we believe that *Parish* provides the proper inquiry and therefore we expressly reaffirm its analysis.

{22} In this case, the elements instruction which omitted the reference to self-defense or unlawfulness was corrected by the subsequent proper instruction on self-defense. The jury was required to decide the issue of unlawfulness and did so when they rejected Cunningham's claim of self-defense.

## E.

{23} Finally, this Court in *Garcia* recognized that review for fundamental error was an exercise of the court's inherent power: "There exists in every court . . . an inherent power to see that a man's fundamental rights are protected in every case." 19 N.M. at 421, 143 P. at 1014–15 (opinion on rehearing). This Court, in *State v. Ortega* decided simply that it was not in the interest of justice to exercise this inherent power: "Here, we not only have confidence in the jury's verdict (guilty on two counts of felony murder); we

think it would be a miscarriage of justice to upset the verdicts and remand for a new trial, the outcome of which most assuredly would be the same." 112 N.M. 554, 566–67, 817 P.2d 1196, 1208–09 (1991). Likewise, in *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992), this Court said, "The trial court's error in failing to instruct on an essential element of a crime for which defendant has been convicted, where there can be no dispute that the element was established, therefore does not require reversal of the conviction." Here, we are convinced that the element of unlawfulness was decided by the jury when they contemplated the separate self-defense instruction. We are further convinced that a reasonable juror, faced with the evidence presented at trial, found no lawful justification for Cunningham's actions, and that he was guilty of deliberate-intent murder. Therefore, it would be improper for this Court to exercise its inherent power in this case when it is unlikely that the interests of substantial justice would be furthered.

{24} Therefore, when the jury received a separate proper instruction on self-defense that provided the jury with the opportunity to decide the issue of unlawfulness the omission from the elements section of a reference to self-defense or unlawfulness in this case does not constitute fundamental error.

### . IV.

{25} Cunningham also maintains that there was insufficient evidence to prove beyond a reasonable doubt that he formed the requisite mens rea to sustain his deliberate-intent first-degree murder conviction. Cunningham correctly asserts that a conviction of deliberate-intent first-degree murder requires evidence proved beyond a reasonable doubt that he formed the intent to kill Mr. Vasquez prior to committing the act. *See* NMSA 1978, § 30–2–1(A)(1) (1994). "Deliberate intention" is defined as, "arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." UJI 14–201 NMRA 1999.

■ {26} In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. *See State v. Vernon*, 116 N.M. 737, 738, 867 P.2d 407, 408 (1993); *see also State v. Litteral*, 110 N.M. 138, 793 P.2d 268 (1990). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 317–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ {27} We believe that the State proved beyond a reasonable doubt several facts from which a reasonable juror could have found that Cunningham formed the deliberate and premeditated intent required to sustain his conviction. This is particularly true when considering that "[i]ntent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Vigil*, 110 N.M. 254, 255, 794 P.2d 728, 729 (quoting *State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985)). A reasonable juror could have believed the assertions of the State premised on the testimony of Carlos Perez that Cunningham was the aggressor in chasing Mr. Vasquez, thereby causing the armed conflict. This is especially true if one considers the testimony of Stacie Wallen describing Cunningham's threat on Mr. Vasquez' life made after a previous high speed chase.

{28} A reasonable juror could have believed that Cunningham fired the last bullet from his .357 magnum revolver with the deliberate intent to kill Mr. Vasquez as the State maintained. The testimony of both Mr. and Mrs. Jones combined with that of the investigating officer tend to prove that Cunningham exited his vehicle and emptied his .380 handgun while standing next to or in a close proximity to Mr. Vasquez' vehicle. However, Mr. Vasquez was not killed with a .380 shot but with a single shot from Cunningham's .357. The State proved that only one shot out of six had been used in Cunningham's .357 magnum revolver. This fact

combined with the testimony of Mr. Jones who said that he heard one distinct shot in addition to the other shots tends to prove that Cunningham had returned to his vehicle after emptying his .380 and deliberately and intentionally fired the fatal shot after Mr. Vasquez was incapacitated and defenseless. A reasonable juror could have concluded that this was an act of a man who had decided "as a result of careful thought and the weighing of the consideration" that he was going to take the life of Mr. Vasquez and he did so by firing the final shot from the .357 magnum revolver. *See* UJI 14–201 NMRA 1999.

{29} Cunningham also relies on *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992), to assert that there was insufficient evidence to prove beyond a reasonable doubt that he formed the mens rea required to sustain his deliberate-intent first-degree murder conviction. However, in *Garcia* reversal was predicated on a factual situation where this Court found no evidence supporting the jury's conclusion that Garcia had weighed and considered the question of killing. *Garcia*, 114 N.M. at 274, 837 P.2d at 867. The Court in *Garcia* considered whether Garcia's statement, "Remove Ray [the victim] away from me or you're not going to see him for the rest of the day," provided the foundation for an inference of deliberation. *Garcia*, 114 N.M. at 275, 837 P.2d at 868. The Court concluded that Garcia's statement did not provide such an inference stating, "Although it suggests that Garcia intended to fight Gutierrez, it certainly does not indicate an intent to kill." *Id.* However, this case is factually different from *Garcia*. Here, according to Stacie Wallen's testimony, Cunningham said, "I'll kill you, I'll shoot you, I don't care." That statement is an unambiguous threat on the life of Mr. Vasquez, and although not direct evidence of an intent to kill at the time of the incident, Cunningham's statement definitely constitutes circumstantial evidence of Cunningham's intention to kill Mr. Vasquez. On this account, we have previously held that "circumstantial evidence is sufficient to up-

hold a first-degree murder conviction" and we believe that Cunningham's statement is strong circumstantial evidence of the deliberate intention required to uphold the conviction. *See Motes*, 118 N.M. at 729, 885 P.2d at 650; *accord* UJI 14–201 ("A deliberate intention may be inferred from all of the facts and circumstances of the killing.")

{30} Under any of these theories, the issue of deliberate intent was a question for the jury. *See State v. Garcia*, 95 N.M. 260, 262, 620 P.2d 1285, 1287 (1980). We will not substitute our judgment for that of the trier of fact as long as there is sufficient evidence to support the verdict. *See State v. Hester*, 1999–NMSC–020, ¶ 7, 127 N.M. 218, 979 P.2d 729. Reviewing the evidence in the light most favorable to the guilty verdict, we hold that there was sufficient evidence to support the jury's conclusion that Cunningham killed Mr. Vasquez with the requisite intent to justify the verdict of first-degree murder.

### V.

{31} We hold that the district court did not commit fundamental error when it omitted the element of unlawfulness from the deliberate-intent murder instruction when the jury was provided with a subsequent proper self-defense instruction. We also hold that there was sufficient evidence of deliberation to support Cunningham's conviction. Therefore, Cunningham's conviction is affirmed.

{32} **IT IS SO ORDERED.**

MINZNER, C.J., SERNA and MAES, JJ., concur.

FRANCHINI, Justice dissenting.

FRANCHINI, Justice. (Dissenting).

{33} I must dissent from the Court's opinion affirming the conviction of the Defendant for first degree murder under NMSA 1978, § 30–2–1–(A)(1) (1994).[1] I cannot

---

1. I concur in the majority's resolution of the jury instruction question, but note, with some significant concern, that the judge, prosecutor, and defense attorney either did not know or ignored the Use Note to UJI 14–5171 (self defense), as

well as the New Mexico case law embodied by *Parish* and its progeny. *See State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994). As this Court has previously observed, "Attorneys and judges have an obligation to keep abreast of current changes

agree that there was sufficient evidence of deliberate intent to permit the jury to find the Defendant guilty of first degree murder.

{34} The majority opinion correctly describes the fight between the Defendant and the victim as a "shootout." Mr. Vasquez's death resulted from a chance encounter between two armed men with a history of bad blood between them. When the fight was over both men had emptied their weapons at each other; Mr. Vasquez was fatally wounded and the Defendant was shot in the chest. Under New Mexico law, this is second degree murder—a killing based on an unconsidered and rash impulse. *See State v. Garcia,* 114 N.M. 269, 273, 837 P.2d 862, 866 (1992).

{35} This Court has previously grappled with the challenge of creating a meaningful distinction between first and second degree murder. *Garcia,* 114 N.M. 269, 837 P.2d 862. In *Garcia,* Justice Montgomery carefully crafted an opinion to provide guidance to New Mexico's appellate and trial courts in making that distinction. *Id.* The *Garcia* Court noted that both murder in the first degree and in the second degree involve intentional killings, but that the law divides along the line of intent in order to separate the most heinous and reprehensible killings—those that are willful, deliberate, and premeditated—from those that are committed without such deliberation. *Id.* at 272–73, 837 P.2d at 865–66. Second degree murder was described as an intentional killing, but one that was committed without deliberation; a rash or impulsive killing. *Id.* at 273, 837 P.2d at 866.

{36} The deliberate intent that separates first degree murder from second is described in the uniform jury instructions in the following manner:

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be

arrived at in a short period of time. *A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.*

Uniform Jury Instruction (UJI) 14–201 NMRA 1999 (emphasis added).

{37} First degree murder requires evidence of deliberate intent and it is sufficient evidence of deliberation that this case lacks. The only testimony in the case regarding deliberation and premeditation is found in the prosecutor's argument in support of first degree murder. But the opening and closing arguments of attorneys are not evidence. *See* UJI 14–101 NMRA 1999 (opening statement is not evidence) and UJI 14–104 NMRA 1999 (argument of attorneys is not evidence). Completely missing in this case is evidence that the Defendant weighed and considered "the question of killing and his reasons for and against such a choice." *See* UJI 14–201.

{38} In reviewing the evidence presented below, this Court must defer to the fact-finder for resolution of factual conflicts in the evidence, but it retains the responsibility of making the legal determination of whether the evidence in the record supports the conviction. *Garcia,* 114 N.M. at 273–74, 837 P.2d at 866–67. The burden is on the State to prove that a defendant had not only the opportunity to form a deliberate intent to kill, but actually formed that intent. *State v. Motes,* 118 N.M. 727, 729, 885 P.2d 648, 650 (1994).

{39} The prosecutor argued that intent could be inferred from a chase between Mr. Vasquez's truck and another pickup truck before the shootout. The eyewitness to the chase, Carlos Perez, was shown a photograph of the Defendant's truck during direct examination. However, he stated that the Defendant's truck was not the pursuing truck that he had seen the night of the shooting. The prosecutor argued that intent could be inferred from a death threat made during the

in the law." *State v. Lopez,* 122 N.M. 63, 66 n. 1,                920 P.2d 1017, 1020 n. 1 (1996).

course of a heated argument between the two men which had occurred several months earlier. This Court determined in *Garcia* that a threat made some 15 minutes before a fatal attack was not sufficient to show whether that defendant had formed the requisite deliberate intent. What can a threat made several months earlier tell us about this Defendant's state of mind the night of the shooting? The testimony of an eyewitness to the shooting, Jean Jones, and the investigating officer, Detective Ballard, fails to support the State's argument that the Defendant stood in close proximity to Mr. Vasquez's truck when he was shooting. Ms. Jones testified that she saw the Defendant get out of his truck, walk briefly toward the front, and then get back in his truck to drive away. She did not see a muzzle flash from a gun being fired then and could not say whether there had been any further shots. Detective Ballard testified that the Defendant's .380 pistol and spent .380 casings were found in the dirt near the stone wall where the Defendant's truck stopped after colliding with Mr. Vasquez's truck.

{40} *Garcia* presented this court with more compelling facts in support of first degree murder than this case. I regretfully conclude that, here, the Court has further blurred the distinction between murder in the first degree and second degree. I fear that once again, we have returned to the situation described in *Garcia* in which " 'virtually all intentional killings will result in jury instructions on first degree murder and the jury will be left to apply its own conception of what deliberate intention means.'" *Id.* at 272, 837 P.2d at 865 (quoting Leo M. Romero, *A Critique of the Willful, Deliberate, and Premeditated Formula for Distinguishing Between First and Second Degree Murder in New Mexico*, 18 N.M. L.Rev. 73, 86 (1988).

{41} I conclude, the facts in this case and the applicable law establish murder in the second degree, i.e. a rash or impulsive intentional killing as a result of a "shootout." The verdict of first degree murder, in my opinion, is not supported by substantial evidence.

The majority holding otherwise, I respectfully dissent.