This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **No. 28,801**

**JESSE MANFORD CHAVEZ,**

Defendant-Appellant

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Frank H. Allen, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals his convictions for great bodily injury by vehicle in violation of NMSA 1978, Section 66-8-101 (2004), reckless driving in violation of NMSA 1978, Section 66-8-113 (1987), leaving the scene of an accident involving death or great bodily harm in violation of NMSA 1978, Section 66-7-201 (1989), and leaving the scene of an accident involving damage to a vehicle in violation of NMSA 1978, Section 66-7-202 (1978). Because we conclude that error in the admission of evidence at Defendant's trial was not harmless, we reverse Defendant's convictions.

**BACKGROUND**

The charges in this case arose from an incident in which a Chevrolet Blazer was involved in two accidents within approximately half a mile of one another. The driver fled the scene on foot after the second accident, leaving the Blazer where it had crashed. Based on information found in the vehicle and through radio contact with the motor vehicle division, using normal police procedure, the police determined that the Blazer belonged to Nancy Chavez. Deputy Charles Haycox contacted Ms. Chavez by telephone the evening of the accident, and during that conversation, Ms. Chavez informed Deputy Haycox that her son, Defendant, had been driving the Blazer at the time of the accident. Two days later, Deputy Haycox called Ms. Chavez once more, and Ms. Chavez again told the deputy that Defendant was driving the Blazer at the

time of the accident. She also stated that Defendant had sustained minor injuries, that he had tried to avoid the accident, and that the accident was not his fault.

At trial, the primary contested issue was whether Defendant was the person driving the Blazer. Paul Chavez, the driver of the first vehicle the Blazer hit, was unable to identify Defendant in court as the driver of the Blazer. However, he testified that he caught a "glimpse" of Defendant's face at the scene and evidence was presented that he selected a photograph of Defendant from a photo array shown to him two weeks after the accident. Loreno Garcia, Jr., the driver of the second vehicle the Blazer hit, stated that he did not get a good look at the driver of the Blazer, that the driver could have been Defendant, but that it was hard to say and that he could not say for certain that Defendant was the driver who hit him. Jimmy Sena, a witness to the second accident, was able to identify Defendant in court as the person involved in the accident. However, Mr. Sena admitted that at the time of the accident with regard to distinguishing marks or tattoos, "I really didn't look at [the driver]. I didn't pay attention that well." The description Mr. Sena provided to the police described Defendant's hair as light brown and apparently did not indicate that Mr. Sena saw the various tattoos on Defendant's chest and back. Another witness to the second accident, Daniel Corona, who knows Defendant and his family, testified that it was Defendant's father who was driving the Blazer.

The State called Ms. Chavez to testify. After a few preliminary questions, the State asked whether Ms. Chavez was the owner of the Blazer. Ms. Chavez said she was, but that she was not driving the vehicle when it was wrecked. The State then asked whether Ms. Chavez recognized certain information on a form that described her vehicle. Ms. Chavez responded that she could not remember and stated that the reason she had difficulties remembering things from the relevant time period was because of personal problems. The State asked whether Ms. Chavez knew who was driving the Blazer on the date in question, and Ms. Chavez said she did not know. The State asked if Defendant had permission to drive it, and Ms. Chavez said, "No. My husband had it at home. It was not working." The State again asked if Defendant had permission to use the Blazer, and Ms. Chavez said her husband would have to be the one to answer that question because she was at work that day. The State asked if Defendant was ever allowed to use the vehicle, and Ms. Chavez said, "[Yes]. My husband did when it was fixed, but it hadn't been fixed for a couple of months." After several questions about Defendant's father, the State asked whether Ms. Chavez remembered being contacted by the Sheriff's Department on the day of the accident. Ms. Chavez said she did not. The State asked if Ms. Chavez remembered Deputy Haycox calling her that day, and she said, "No." The State asked if she remembered being contacted by the deputy two days later, and Ms. Chavez gave a response that is

4

transcribed as "(No audible response.)" The State began to ask if Ms. Chavez remembered telling Deputy Haycox something during their phone conversation, but defense counsel interjected and objected on grounds of hearsay. The district court asked if the State's question was being asked for purposes of impeachment, and the State said it was.

A brief bench conference was held, during which the court excused the jury to hear further argument. Neither the district court nor the State indicated specifically which of Ms. Chavez's in-court statements was inconsistent with her prior out-of-court statements such that she could be impeached with the prior statements. The State tendered evidence that Ms. Chavez would testify that she did not remember speaking to Deputy Haycox about the accident and that she did not remember making the statements he said she made. Defense counsel objected stating that Ms. Chavez's prior statements were hearsay and did not fall within the exception provided by Rule 11-801(D)(1)(a) NMRA, which only permits the admission of prior inconsistent statements if the statements were made under oath. The district court asked whether an out-of-court statement is a prior inconsistent statement when the witness says she does not remember the prior conversation. Defendant did not directly address the substance of this question, saying that the testimony was "essentially impeachment" and that the State was trying to impeach Ms. Chavez, but the jury would use the

5

testimony as substantive evidence which would not be proper because the prior statements were not under oath. The State argued that it could impeach Ms. Chavez because she claimed to have no memory of the prior statements and that pursuant to Rule 11-613 NMRA, the statements would then be admissible through Deputy Haycox. Defendant argued that if the prior statements were offered, the State could try to refresh Ms. Chavez's recollection, but that the prior statements could not be relayed to the jury. The district court ruled that it would allow the questioning of Ms. Chavez as impeachment and then permitted Deputy Haycox to testify about the conversation as extrinsic impeachment evidence.

The jury was brought back into the courtroom and Ms. Chavez testified that she did not remember speaking to Deputy Haycox. The following colloquy took place.

Q. Okay. Do you remember when [Deputy Haycox] called you on June 10th at 9:30 in the evening that you told him that [Defendant] had been driving a Blazer that day?

A. No.

Q. Do you remember telling him that you would try to find [Defendant] so that he could talk to him about the wreck?

A. No.

Q. Do you remember talking to him again two days later on June 12th at about 9:35 in the evening?

A. No. I don't remember.

Q.    Do you remember telling him at that time that [Defendant] had told you that he was driving the Blazer?

A.    No.

Q.    Do you remember telling him that [Defendant] had told you that he was in an accident?

A.    No.

Q.    Do you remember telling Deputy Haycox that [Defendant] said he had received minor scrapes and scratches in the accident?

A.    No. I don't remember.

Q.    And that he hurt his knee?

A.    (Shaking head.)

Q.    Do you remember telling Deputy Haycox that [Defendant] said it wasn't his fault?

A.    No, I don't remember.

Q.    And that [Defendant] tried to prevent it from occurring?

A.    No.

Q.    So you don't remember talking to the deputy at all?

A.    I can't remember right now.

Ms. Chavez explained that the reason she was having difficulties with her memory was because the year of the accident, her husband, her sister, and her brother died, and that their deaths had caused Ms. Chavez stress and anxiety that required medication.

She stated that she did not deny having a conversation with Deputy Haycox, only that she could not remember whether she had such a conversation. Deputy Haycox later testified as to the substance of his conversations with Ms. Chavez.

Defendant was convicted and now appeals, arguing that (1) the admission of Ms. Chavez's prior out-of-court statements as impeachment was erroneous and that the error was not harmless, (2) there was insufficient evidence on which a jury could find beyond a reasonable doubt that Defendant was the driver of the Blazer, and (3) Defendant's right to be free of double jeopardy was violated by his conviction of two charges that should have been merged into one offense.

**DISCUSSION**

**Impeachment of Ms. Chavez with Her Prior Out-of-Court Statements**

Defendant contends that the district court erred in admitting evidence of the out-of-court statements Ms. Chavez made to Deputy Haycox regarding the accident. Defendant contends that the use of this evidence for purposes of impeachment was improper because Ms. Chavez's in-court statement that she had no recollection of any conversation with Deputy Haycox provided no version of an event to impeach. We review the district court's decision for abuse of discretion in admitting evidence for the purpose of impeachment. *See State v. Macias*, 2009-NMSC-028, ¶ 16, 146 N.M.

8

378, 210 P.3d 804. A district court abuses its discretion when its ruling is based on a misunderstanding of the law. *Id.*

When a witness's testimony at trial differs from some other statement she has made previously, the witness's prior inconsistent statement may be used to impeach the witness's credibility pursuant to Rule 11-613. *See Macias*, 2009-NMSC-028, ¶ 20 (noting that "it is the fact of the inconsistency that is admissible, not the substantive truth or falsity of the prior statement"). "To accomplish impeachment by prior inconsistent statements, the attorney must first elicit in-court testimony about a matter. If the testimony is inconsistent with [the] witness's prior statement, the attorney confronts the witness with the prior statement." *Id.* However, if the only testimony of the witness that is questioned for inconsistency is the witness's statement of lack of memory about making a prior statement, the prior statement cannot be used to impeach the witness because there is no direct inconsistency between the testimony of a lack of memory and the prior statement. *See id.* ¶ 21.

In this case, Ms. Chavez testified that she could not remember speaking with Deputy Haycox about the accident. This statement was the only stated basis for the State's argument in the district court regarding impeachment. The State did not contend that it sought to impeach the witness based on any other factual statements that Ms. Chavez made up to the point in the trial when this impeachment issue was

raised. Furthermore, on appeal, the State points to no statement of fact made by Ms. Chavez that could provide an alternative basis for the district court's ruling. Accordingly, we only address the issue of whether Ms. Chavez's statement that she did not remember any conversation with Deputy Haycox provided a basis for impeaching her with extrinsic evidence of the conversations. We hold that, pursuant to *Macias*, the use of Ms. Chavez's prior statements for impeachment purposes was improper where Ms. Chavez testified at trial that she simply did not remember having any conversation with Deputy Haycox. *See id.* ¶¶ 21-22.

The State reads *Macias* to permit the use of a witness's prior statements for impeachment purposes when the witness testifies at trial to a lack of memory. *Macias* does not support this argument. *Macias* held that when a witness testifies to a lack of memory, the use of prior statements cannot be for impeachment purposes because there was no inconsistent statement to impeach. *See id.* ¶ 21. *Macias* states that

> [t]he use of the taped phone conversation during the [d]istrict [a]ttorney's direct examination of [a witness] was not for impeachment purposes. The [d]istrict [a]ttorney began this area of questioning by asking [the witness] whether he remembered calling [his cousin] . . . . After [the witness] testified that he did not remember the telephone call and was uncertain what was discussed, the [d]istrict [a]ttorney distributed a transcript to the jury and played the recording of the phone call in its entirety. The [d]istrict [a]ttorney then proceeded to have [him] attempt to interpret the meaning of [her] statements. The [d]istrict [a]ttorney simply was not impeaching [the witness] with a prior inconsistent statement, because [he] had not made a statement in his testimony that could be impeached by the statements made in the call.

10

*Id.* Although *Macias* contains a citation to a West Virginia Supreme Court of Appeals case stating that when a witness testifies to a lack of memory, prior statements may only be used "sparingly to demonstrate lack of integrity in the witness," *Macias* did not actually approve of any use of the prior statements in that case and did not explain what "must be used sparingly" might entail. *Id.* What *Macias* did say, however, was that even if use of the statements as impeachment had been proper, "the introduction of the entire call with its myriad hearsay statements would plainly be an inappropriate undertaking, unless the hearsay itself were admissible." *Id.* In this case, where it appears that the State cross-examined Ms. Chavez about the entire substance of her prior statements to Deputy Haycox and introduced extrinsic evidence of the conversation through the deputy's testimony, *Macias* counsels that the admission of this evidence was improper.

Because *Macias* indicates that the evidence of Ms. Chavez's prior statements was not admissible for purposes of impeachment, and as there is no contention that it was admissible as substantive evidence, Defendant was not required to request a limiting instruction in order to merit reversal on appeal. *See* Rule 11-105 NMRA (stating when evidence is admissible for one purpose but not for another, a party may request a limiting instruction). This is not a case in which the evidence could have

been properly limited to a particular legitimate evidentiary use. Instead, it was simply inadmissible.

The State argues that even if the evidence should not have been admitted for impeachment purposes, the error was harmless. "A reviewing court should only conclude that a non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 (emphasis omitted). To decide whether error in the admission of evidence was harmless, this Court considers whether there is: "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id.* ¶ 56 (footnote omitted).

Here, there was substantial evidence to support Defendant's convictions without reference to the improperly admitted evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Defendant's only argument regarding the sufficiency of the evidence was that there was insufficient evidence to establish that

he was the person driving the Blazer. However, two eyewitnesses identified Defendant as the driver. At trial, Mr. Sena identified Defendant as the person involved in the accident. Mr. Chavez testified that he caught a "glimpse" of Defendant's face at the scene, and there was evidence that he selected Defendant as the driver in a photo array shown to him two weeks after the incident. Although Mr. Chavez could not identify Defendant in court, his prior identification, in combination with Mr. Sena's in-court identification, was substantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that Defendant was the driver.

Although there was substantial evidence to support the conclusion that Defendant was the driver, we conclude that there was not such a disproportionate volume of permissible evidence on this issue that the impermissible evidence seems minuscule. *See Barr*, 2009-NMSC-024, ¶ 56. With respect to his identification of Defendant, Mr. Sena stated that even though he came face to face with Defendant while at the scene, with regard to distinguishing marks or tattoos he replied, "I really didn't look at him. I didn't pay attention that well." Defendant was not wearing a shirt when Mr. Sena saw him after the accident, Mr. Sena did not testify to seeing the various tattoos on Defendant's chest and back. In Mr. Sena's statement to the police after the accident, he said that Defendant had light brown hair, and when asked at trial

13

what color Defendant's hair was, Mr. Sena revised his assessment and called Defendant's hair "light black." Mr. Chavez selected Defendant's photograph from an array of photos provided by the police two weeks after the accident, but both he and Mr. Garcia were unable to identify Defendant at trial. The volume of the evidence identifying Defendant as the driver does not make the prior out-of-court statements of Defendant's mother, which relay Defendant's confession to her that he was the driver of the vehicle, minuscule in comparison.

Finally, Defendant introduced the testimony of Mr. Corona that it was Defendant's father who was driving the Blazer at the time of the accidents. This constitutes substantial evidence that conflicted with the State's evidence that Defendant was the driver. *See id.*

Upon balancing these factors, this Court can conclude that there is a reasonable probability that the error in the admission of Ms. Chavez's prior statements affected the verdict. *See id.* ¶ 53. Accordingly, the error is not harmless and warrants reversal of Defendant's convictions.

**Defendant's Other Claims of Error**

Defendant asserts that there was insufficient evidence to establish that he was the person driving the vehicle. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all

reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration omitted) (emphasis omitted) (internal quotation marks and citation omitted). As we explained in our harmless error analysis, we conclude that the evidence was sufficient and that reversal is not warranted on this basis. To the degree that any of the witnesses' testimony identifying Defendant was equivocal or subject to questions about its reliability, such conflicts in the evidence were for the jury to resolve.

Because we reverse all four of Defendant's convictions on the basis of the erroneous admission of Ms. Chavez's hearsay statements for impeachment purposes, we need not address Defendant's argument for reversal of one of his convictions based on his claim that two of the charges against him should have merged in order to comport with double jeopardy principles.

**CONCLUSION**

For the reasons stated in this opinion, we reverse Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**TIMOTHY L. GARCIA, Judge**