STATE V. MONTOYA

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**MICHAEL MONTOYA,**
**Defendant-Appellant.**

Docket No. A-1-CA-37617
COURT OF APPEALS OF NEW MEXICO
March 18, 2019

APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY, Jason Lidyard, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Maha Khoury, Assistant Attorney General, Santa Fe, NM, for Appellee.

Bennett J. Baur, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR:  JULIE J. VARGAS, Judge, KRISTINA BOGARDUS, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}**    Defendant appeals his conviction for felony criminal damage to property of a household member. We issued a notice of proposed summary disposition proposing to affirm, and Defendant has responded with a memorandum in opposition, which we have duly considered. We remain unpersuaded that our proposed disposition was incorrect, and we therefore affirm.

**{2}** Defendant continues to argue in his memorandum in opposition that the evidence was insufficient to sustain his conviction for criminal damage to property. [MIO 3] The sole issue raised on appeal is whether the evidence was sufficient to prove that the amount of damage to the vehicles exceeded $1,000. [MIO 1] *See* NMSA 1978, § 30-15-1 (1963) (stating that criminal damage to property is a felony where the damage to the property amounts to more than one thousand dollars).

**{3}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344.

**{4}** To support a conviction for felony criminal damage to property under the instruction given, the State was required to prove that Defendant intentionally damaged the property of Francine Montoya with the intent to intimidate, threaten, or harass her and that the amount of the damage exceeded $1,000. [RP 118] *See* NMSA 1978, § 30-3-18(A) (2009) (defining criminal damage to property of a household member); *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). The jury was also given UJI 14-1510 NMRA, which defines the "amount of damage" as:

> the difference between the price at which the property could ordinarily be bought or sold prior to the damage and the price at which the property could be bought or sold after the damage. If the cost of repair of the damaged property exceeds the replacement cost of the property, the value of the damaged property is the replacement cost.

**{5}** Relevant to this issue, the State presented evidence at trial that Defendant repeatedly drove a 2014 Kia owned by Ms. Montoya into the back of a Honda, also owned by Ms. Montoya, such that the Kia was wedged into the trunk and bumper area of the Honda, and the two vehicles were stuck together. [State's MIO 2; Defendant's MIO 2] Ms. Montoya and her sister both testified that after the incident, the transmission and engine of the Kia were "on the floor." [State's MIO 3; Defendant's MIO 2] Ms. Montoya testified that she had purchased the Kia for $12,000 several months earlier, and that it was encumbered by a loan that required her to pay $275 per month. [State's MIO 3; Defendant's MIO 2] Ms. Montoya testified that, at the time of the incident, the Kia was almost new and in good condition with a value of between $12,000 and $15,000. [State's MIO 3; Defendant's MIO 2] Ms. Montoya further testified that, following the incident, the insurance company informed her that the Kia "was not fixable" and not worth repairing. [State's MIO 3; Defendant's MIO 2] With respect to the Honda, Ms. Montoya testified that it was sold for scrap metal, and that she had paid $500 for it some

years earlier. [State's MIO 3; Defendant's MIO 2] Finally, the jury was shown photographs of the Kia, which showed damage to its bumper. [DS 3]

**{6}** UJI 14-1510 provides two methods by which the amount of damage can be determined. *See State v. Barreras*, 2007-NMCA-067, ¶ 5, 141 N.M. 653, 159 P.3d 1138. First, the state can show the "before and after value" or the "diminution in value" of the property, which is "the difference between the price for which the property could be bought or sold before the damage and the price after the damage." *Id.* Under the second method, the State can show the cost of repair. *Id.* ¶ 6. UJI 14-1510 "provides that if the cost of repair is more than the replacement cost, the value or amount of damage is the replacement cost." *Barreras*, 2007-NMCA-067, ¶ 6. Also, under this method, "if the cost of repair does not exceed the replacement cost of the property, then the cost of repair is the value used to determine the amount of damage." *Id.*

**{7}** Defendant concedes in his memorandum in opposition that the evidence at trial was sufficient to show the replacement cost of the Kia was between $12,000 and $15,000. [MIO 4-5] However, Defendant argues that the State failed to show the diminution in value or the cost of repair of either vehicle. [MIO 5-6] Defendant attempts to distinguish this case from *Barreras*, in which we held that the jury could rely on common knowledge and experience to determine that the replacement cost of a nearly new luxury SUV would exceed the repair estimate of $5,100. *Id.* ¶ 9. Defendant argues that the jurors in this case could not use common sense to determine the diminution in value or cost of repair because both would require estimates to be made. [MIO 5]

**{8}** We agree with Defendant that Ms. Montoya's testimony that she paid $12,000 for the Kia and that it was worth between $12,000 and $15,000 before the damage was inflicted was sufficient to show a replacement cost for the vehicle of at least $12,000. However, we must reject Defendant's argument that the State failed to meet its burden of proof because it did not present evidence to show the cost of repairing the Kia. As described, there was evidence that the damage to the Kia could not be repaired. Accordingly, the evidence of the replacement cost of the Kia was sufficient to establish the amount of damage. *See State v. Cobrera*, 2013-NMSC-012, ¶ 16, 300 P.3d 729 (stating that the replacement cost of irreparable items is an appropriate measure of the value of the items); *see also State v. Haar*, 1990-NMCA-076, ¶¶ 8-11, 110 N.M. 517, 797 P.2d 306 (indicating that the jury can infer that the replacement cost is equal to the purchase price).

**{9}** As the State's evidence was sufficient to prove an amount of damage of at least $12,000, we affirm Defendant's conviction for criminal damage to property in excess of $1,000.

**{10} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**