This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-34885**

**ROLLIE BRUVOLD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     Defendant Rollie Bruvold appeals his convictions for seven counts of criminal sexual penetration of a minor (CSPM). Defendant raises one issue—that the evidence was insufficient to show that the victim was under the age of thirteen for each of the seven counts of CSPM. We conclude the evidence to be sufficient to support only one of Defendant's CSPM convictions. We therefore affirm in part and reverse in part.

## BACKGROUND

**{2}** The following evidence was presented to the jury. Defendant and Jill Bruvold ("Mother") are the parents of three daughters, Carrie Bruvold, Jana Bruvold ("Jana"), and the youngest, C.B. Defendant was sporadically employed and for the most part stayed home while Mother worked. The children attended school until or around the time C.B. completed kindergarten, after which the children were homeschooled. According to Jana, the teachers discovered C.B. had a learning disability while she was in kindergarten and determined that C.B. would have to repeat kindergarten, which was unacceptable to Defendant. Afterward, Defendant was in primary charge of homeschooling the three children while Mother worked. The homeschool curriculum was unstructured, however, and consisted primarily of "P.E." during the day, and reading and math when Mother returned home from work.

**{3}** Defendant was often home alone with his daughters. While home with C.B., Defendant sometimes walked around the house in the nude which led C.B. to believe the behavior was normal. Defendant also discussed sex with C.B., and when C.B. was four or five years old Defendant began performing sexual acts on her.

**{4}** C.B. described the following separate acts of CSPM during her testimony. On one occasion Defendant entered the family room where C.B. was playing with toys on the couch. Defendant pulled down his pants and instructed C.B. to "suck on his penis." C.B. complied and the act ended when Defendant ejaculated. C.B. could not recall how old she was when this CSPM occurred. On a separate occasion, C.B. and Defendant were within a camper shell situated on the rear of a truck parked in their driveway. There, Defendant removed his pants and instructed C.B. to "suck his penis" which she did. On another occasion in the camper, Defendant attempted to engage in sexual intercourse with C.B. but was unable to fully penetrate her vagina with his penis. Defendant told C.B. that he would "try again when [she got] older."

**{5}** On another occasion, Defendant entered C.B.'s room where she was playing with toys. On that occasion Defendant penetrated her vagina with his index finger and told C.B. that she could "put markers and crayons up in [her] vagina." On yet another occasion, Defendant removed C.B.'s pants while she was laying on a couch in the family room and inserted his middle finger into her vagina.

**{6}** Defendant also performed oral sex on C.B. C.B. testified that on one occasion while she was watching a movie, Defendant walked into the room naked, laid on the floor and C.B. took off her pants and underwear and "sat on his face." Defendant then licked her vagina. On a separate occasion Defendant entered C.B.'s bedroom while she was playing with toys on her bed, made her lay on her back and began licking her vagina.

**{7}** Jana testified that she once walked into the den, where all of a sudden C.B. stood and pulled her pants up real fast. Jana was not asked, nor did she testify, how old C.B. was or when the event in the den took place. Jana did testify that in 1995, the family had been interviewed by Children, Youth and Families Department (CYFD), following an incident in which C.B. was discovered "doing something sexually to [a

neighbor] boy." At the time, C. B. was six or seven years old. Jana testified that afterward Defendant was very nervous and told them that if anything had been mentioned regarding C.B. or what they had seen, Jana and her sisters would be removed from the family and placed in foster care. Jana also testified that in July 2002 when C.B. was thirteen, she walked into Defendant's bedroom and saw Defendant and C.B. under the covers facing each other. Jana told them they were disgusting. C.B. later testified that she was playing with Defendant's penis over his pants.[1] A few days later Jana told her therapist about the incident and he called CYFD. The Bernalillo County Sheriff's Office (BCSO) opened an investigation and conducted a SAFE house interview with C.B. BCSO also conducted an interview with Defendant in which he admitted that sexual activity occurred, but dismissed the encounters as "family-type stuff, family interaction." Defendant claimed he was sought out by C.B. and that "all girls want to be daddy's little lovers." Defendant characterized his actions as normal and stated that it was simply a learning experience.

**{8}** Although C.B. testified at trial to specific instances of CSPM, she was unable to recall a specific date for any of the sexual assaults. C.B. testified that the abuse ended in 2002 after she turned thirteen, when her sister walked in on her in Defendant's bedroom. C.B., who was born on July 25, 1988, would have been thirteen years and eleven months-old when the abuse ended.

**{9}** Also at trial, Mother testified that it was mostly Defendant's idea to homeschool their daughters and that he was controlling over her. She also testified that she never saw inappropriate interactions between Defendant and C.B. and that Defendant was in California for medical reasons sometime in 2001.

**{10}** The jury convicted Defendant of seven counts of CSPM, pursuant to NMSA 1978, Section 30-9-11(D)(1) (2009). This appeal followed.

## DISCUSSION

**{11}** In addition to the other elements of CSPM, the jury was instructed that in order to convict Defendant of CSPM, it had to find beyond a reasonable doubt that criminal sexual penetration occurred when C.B. was "under the age of thirteen (13)." Defendant's challenge to the sufficiency of the evidence only concerns this element.

### Standard of review

**{12}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict."

---

1Defendant was not charged with the July 2002 event.

*State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{13}** However, despite our deferential approach, our responsibility is to, "ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). Our inquiry requires that we, "distinguish between conclusions based on speculation and those based on inferences." *Id.* "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). Even still, "when a permissible logical inference may be drawn from the facts, if it must be buttressed by surmise and conjecture in order to convict, the conviction cannot stand." *Id.* (internal quotation marks and citation omitted).

**The Evidence Before the Jury was Sufficient to Support Only One of Defendant's Seven Convictions for CSPM.**

**{14}** C.B.'s testimony that the incidents began when she was "four or five years old" could have led a reasonable juror to infer that at least one of the CSPMs she described took place while C.B. was under the age of thirteen. However for the reasons we explain below, we conclude that the evidence is insufficient otherwise to support a reasonable inference that C.B. was under the age of thirteen when the remaining six CSPMs took place.

**{15}** The State concedes C.B. was unable to provide a specific time period or age during which the various CSPMs occurred. Nonetheless, the State contends that the circumstantial evidence before the jury was sufficient to support a rational inference that C.B. was under the age of thirteen when Defendant committed the CSPMs. The State points to C.B.'s testimony that the assaults started when she was four or five years old, that several incidents began while she was playing with toys, an activity the State contends is consistent with early childhood, and that one of C.B.'s accounts detailed a statement of Defendant that she could "put markers and crayons up in [her] vagina[,]" again asserting that markers and crayons are indicative of early childhood.

**{16}** The State also asserts that the totality of the evidence before the jury demonstrated that Defendant was grooming C.B. for sexual exploitation. The State relies on the following evidence: (1) Defendant separated his daughters from friends and other sources of sexual education by withdrawing them from school and homeschooling them; (2) Defendant threatened C.B. that she would be "in trouble" and could be "taken to a concentration camp[,]" if she ever told anyone; (3) in 2002 C.B. was angry that Jana thought it was disgusting that C.B. and Defendant were in bed together; (4) when C.B. was seven she was caught engaging in sexual activity with a neighbor boy; and (5) Defendant told the police that "all girls want to be daddy's little lovers."

**{17}** A similar issue was addressed by our Supreme Court in *State v. Sena*, 2008-NMSC-053, 144 N.M. 821, 192 P.3d 1198. In *Sena* the defendant appealed two convictions for criminal sexual contact with a minor ("CSCM") arguing that the evidence was insufficient to establish more than one count. *Id.* ¶¶ 6-7. Although there was no question as to whether the child was under the age of thirteen during the charging period, at issue was what, if any, abuse occurred during the charging period. At trial the child victim had difficulty identifying the exact dates of each occurrence. To aid the child's recollection, the state utilized bench mark events in the child's life so that the events could be placed within the charging period. Even still the child's testimony was inconsistent with the number of incidences alleged to have occurred within the charging period. However the child was able to describe two incidents in detail. Defendant's motion for a directed verdict was denied and he was convicted of two counts of CSCM. On appeal this Court reversed one of the convictions holding that the evidence supported only one conviction because the child's testimony could not reasonably be interpreted as establishing that she had been touched more than once during the charging period. *Id.* ¶ 7.

**{18}** In reversing this Court, our Supreme Court disagreed with our conclusion that the record did not support the inference that the child had been touched multiple times during the charging period. *Id.* ¶ 11. Concluding that the jury acted rationally in resolving factual inconsistencies in the child's testimony, our Supreme Court stated that "appellate courts faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prevailing party, and must defer to that resolution." *Id.* (alterations, internal quotation marks, and citation omitted). The Supreme Court clarified that "the applicable standard of review does not contemplate our parsing the testimony and viewing the verdict only in light of the probative value of individual pieces of evidence." *Id.* (alterations, internal quotation marks, and citation omitted).

**{19}** In contrast to *Sena*, here, the jury did not resolve an inconsistency in testimony, nor did it rely upon known benchmark events in C.B.'s life, which had the capacity to establish approximate dates within the charging period. Rather, we conclude it rendered its verdict based on supposition and conjecture. On at least one occasion when asked how old she was during an instance of abuse she described at trial, C.B. stated that she did not know. At trial the State did not establish a time period for the abuse by evoking testimony based on benchmark dates such as significant events in C.B.'s life. The State only asked C.B. how she remembered the abuse, and when she answered, "I've always remembered it[,]" the State failed to follow up with more probative questions to establish a time frame for each occurrence. C.B.'s testimony was clear in describing specific acts of CSPM, and the locations in which they occurred, but lacked any information to establish that the acts occurred when she was under thirteen years of age. This is particularly notable because the record reflected the abuse ended approximately a year after C.B. turned thirteen, leaving a one-year period in which the abuse described could have occurred outside of the CSPM statute's reach.

**{20}** Testimony from the State's other witnesses also fell short of establishing a reasonable inference as to C.B.'s age for each act of CSPM. While Jana testified that she remembered an incident where she walked into the den to find C.B. startled and pulling up her pants quickly, Jana never stated how old C.B. was nor did she provide any other chronological information. Mother's testimony was equally uninformative. While, "no juror need have a precise day in his or her own mind in order to vote for conviction[,]" a jury necessarily must determine that the elements of the charged offense are satisfied beyond a reasonable doubt. *State v. Altgilbers*, 1989-NMCA-106, ¶ 56, 109 N.M. 453, 786 P.2d 680

**{21}** Without direct testimony regarding the time in which the sexual abuse occurred the jury was left to determine as much from other evidence. The State argues that the fact C.B. was playing with toys and markers at the time of some of the assaults indicates she was under the age of thirteen. However, the fact that C.B. was playing with toys at the time of the acts bears little, if any, relation to C.B.'s age at the time. In fact the State made no attempt to illicit testimony from C.B. as to what type of toys C.B. was playing with or at what age she quit using markers, if she ever did. Additionally, the State elicited testimony that C.B. suffered from a learning disability, which may have slowed her mental development or otherwise delayed her progression toward maturity. The evidence presented by the State required a significant measure of speculation and conjecture by jurors to arrive at the conclusion that C.B. was under the age of thirteen when Defendant perpetrated each of the CSPMs. Likewise the evidence of grooming and that of C.B.'s "sexual activity" with a neighbor boy fall short of creating an inference that C.B. was under the age of thirteen when all of the charged CSPMs took place. C.B. was never asked and did not testify that any of the CSPMs she described took place before or shortly after she was discovered engaging in "sexual activity" with the neighbor boy. Based on the foregoing we find the evidence insufficient to support the jurors determination that C.B. was under the age of thirteen when Defendant committed six of the seven acts of CSPM.

**CONCLUSION**

**{22}** We affirm one of Defendant's convictions, and reverse and vacate the remaining six. We remand this case to the district court for resentencing.

**{23}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**J. MILES HANISEE, Judge**