This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: June 9, 2025**

**No. S-1-SC-40305**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**MATTHEW WOOD,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**David A. Murphy, District Judge**

The Gorence Law Firm, LLC
Robert Gorence
Albuquerque, NM

Harrison & Hart, LLC
Carter B. Harrison IV
Nicholas T. Hart
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Walter Hart, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**ZAMORA, Justice.**

**{1}**     Defendant Matthew Wood challenges his convictions for first-degree felony murder and shooting at a motor vehicle resulting in great bodily harm. Defendant argues on appeal that: (1) the evidence was insufficient to support the convictions; (2) the State engaged in prosecutorial misconduct in its closing argument; (3) his due process rights were violated when the jury convicted him of felony murder without convicting him of the predicate offense; (4) the jury instructions failed to properly instruct the jury as to the felony murder charge; and (5) there was cumulative error sufficient to warrant reversal. We affirm and exercise our discretion to resolve this case by nonprecedential decision and thus limit our discussion of the law and the facts to that necessary to decide the merits of this appeal. *See* Rule 12-405(B) NMRA; *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (explaining nonprecedential decisions are written solely for the benefit of the parties, who know the details of the case).

## I.     BACKGROUND

**{2}**     In September 2019, Noah Tafoya ("Victim") posted on social media advertising a handgun for sale. A friend of Defendant, Everton McNab, agreed to meet Victim at Victim's apartment complex to purchase the gun. Defendant drove McNab to the meeting.

**{3}**     Upon arriving at the apartment complex, Defendant backed his Toyota Camry into a parking spot close to the entrance of the complex. Defendant exited the car and walked away. After Defendant exited the vehicle, McNab moved from the passenger seat to the driver's seat.

**{4}**     Victim, who lived in the complex, told his friend Jorden Chavez that he was meeting someone to sell the person a gun. Victim asked Chavez to drive him there in Chavez's car. Chavez backed his car, a white Mercedes Benz, into a spot next to Defendant's car. Victim got out of Chavez's car (the Mercedes) and entered the passenger seat of Defendant's Camry. Chavez remained in the driver's seat of his Mercedes and began scrolling on his phone. Defendant's car—the Camry—was parked so that its driver's side was facing the passenger side of the Mercedes.

**{5}**     According to the testimony at trial, Chavez's Mercedes was parked adjacent to Defendant's Camry, with both vehicles facing outward toward the roadway leading to the entrance of the apartment complex. Chavez was seated in the driver's seat of his Mercedes, McNab was seated in the driver's seat of Defendant's Camry, and Victim was seated in the passenger seat of Defendant's Camry. Defendant testified that he was approximately 50 yards away from his Camry.

**{6}**     What happened next was contested at trial. The State's version of events was that McNab attempted to rob Victim at gunpoint in Defendant's Camry and shot Victim after the two struggled over McNab's gun. According to the State, prior to Victim being shot, Defendant approached Chavez's Mercedes from the driver's side of the vehicle and held a knife to Chavez's throat. Chavez, who was armed with his own gun, testified that he looked up from his phone and saw Victim in the passenger seat of Defendant's Camry with his hands up, while McNab, who was in the driver's seat of the Camry, said

"Don't move. Don't fuckin' do it." Chavez heard the driver's side door of his car open and felt the knife. Chavez's testimony indicated that the man with the knife was white with a scruffy beard. Chavez offered to give Defendant his car and then shot at Defendant when Defendant briefly stepped backwards. Chavez then felt a gunshot and was thrown onto the pavement from the driver's side of his vehicle. Chavez got up off the ground, climbed back into his car and drove out of the parking lot. He turned to the right in front of the Camry, hearing additional gunshots as he fled. Chavez suffered several gunshot wounds, including one in his right side, two or three in his left side, and one in the lower left side of his back. According to the State, it was Defendant who shot at Chavez's Mercedes while Chavez attempted to flee.

**{7}** Finally, the State argued that, after firing at the Mercedes, Defendant walked back over to the passenger side of his Camry and shot Victim in the leg after Defendant heard and saw McNab and Victim struggling over McNab's gun. The State presented evidence that Victim was shot in his abdomen from the left at close range and in his thigh from the right, at a slightly longer range. The State's expert testified that Victim died as a result of these wounds.

**{8}** Defendant testified that he was unaware of McNab's plan to rob Victim, that he never spoke to or threatened Chavez, that he did not carry a gun, and that he did not have or shoot a .40 caliber Glock that night. He admitted to having a knife in his hand as he approached Chavez, testifying that he approached the car to defend his vehicle.

**{9}** All four men were seriously wounded by gunfire. Victim died on the way to the hospital. Before dying, Victim told a witness on the scene that he had been robbed.

**{10}** Defendant was subsequently charged. Following a trial, Defendant was convicted of felony murder, conspiracy to commit armed robbery, shooting at a motor vehicle resulting in great bodily harm, aggravated battery, and aggravated assault. The jury deadlocked on the charge of armed robbery. Defendant was sentenced to a term of life in prison for felony murder, and the remaining sentence of fourteen and a half years was set to run concurrently with the life sentence. Defendant timely appealed to this Court.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

### 1.    Standard of review

**{11}** Evidence is sufficient to sustain a conviction if substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt as to every element of the offense. *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056. "In reviewing the sufficiency of the evidence, the reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks, brackets, and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's

version of the facts." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). The "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (internal quotation marks and citation omitted).

## 2.     Felony murder

**{12}**     To find Defendant guilty of felony murder based on aiding and abetting, the State was required to prove beyond a reasonable doubt that: (1) Defendant intended that McNab commit the felony of armed robbery; (2) McNab committed or attempted to commit the felony of armed robbery under circumstances or in a manner dangerous to human life; (3) Defendant helped, encouraged, or caused the felony of armed robbery to be committed or attempted; (4) during the commission or attempted commission of the felony, Victim was killed; (5) Defendant helped, encouraged, or caused the killing to be committed; (6) Defendant intended the killing to occur or knew that he was helping to create a strong probability of death or great bodily harm; and (7) this happened in New Mexico on or about the 12th day of September 2019.

**{13}**     Defendant contests the sufficiency of the evidence only as to the fifth and sixth elements of the offense. Defendant argues the evidence adduced at trial was not sufficient to prove he aided and abetted the killing of Victim because the jury was required to draw impermissible inferences from the evidence to sustain the conviction. We disagree.

**{14}**     "The evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval." *State v. Salazar*, 1967-NMSC-187, ¶ 4, 78 N.M. 329, 431 P.2d 62 (internal quotation marks and citation omitted); *see also* UJI 14-2821 NMRA (stating aiding and abetting in a killing requires the jury to find that the defendant "helped, encouraged, or caused the killing to be committed" (use note omitted)). Here, there was both testimonial and physical evidence that Defendant helped, encouraged, or caused the killing to be committed by holding Chavez at knifepoint in the Mercedes as McNab robbed and shot Victim in the nearby Camry, and by shooting at Chavez as Chavez attempted to flee. Evidence that a defendant held a third party at bay while the defendant's associates committed a killing nearby is sufficient to establish aiding and abetting of the killing. *State v. Nieto*, 2000-NMSC-031, ¶ 28, 129 N.M. 688, 12 P.3d 442.

**{15}**     There was ample evidence from which the jury could reasonably infer that Defendant held Chavez at knifepoint and thereby helped McNab rob and shoot Victim. Specifically, Chavez testified that he observed Victim being robbed in the vehicle next to him, he then felt a knife against his neck, and he was shot at as he attempted to flee in his car. Although Chavez did not get a good look at the man who held the knife to him, an investigator testified at trial that he believed Chavez described the man as white with

a "scraggly" beard in an interview conducted shortly after the shooting and Chavez's testimony at trial was consistent with this description. McNab is African American and Defendant is white. A video of Defendant in the hospital played at trial showed that, immediately after the shooting, Defendant had a beard. Based on this evidence, a reasonable jury could have determined that Defendant aided and abetted McNab's killing of Victim. *See Nieto*, 2000-NMSC-031, ¶ 28; *see also State v. Ochoa,* 1937-NMSC-051, ¶ 39, 41 N.M. 589, 72 P.2d 609 (concluding a jury could find two defendants guilty of aiding and abetting the killing of a sheriff when the defendants assaulted the sheriff's deputy who "would be expected to come to the aid of his chief in peril" after the sheriff's party had been fired upon).

**{16}** We further conclude there was sufficient evidence from which a reasonable jury could find that Defendant "intended the killing to occur or knew that he was helping to create a strong probability of death or great bodily harm" by holding Chavez at knifepoint while McNab robbed and shot victim in the Camry. *See* UJI 14-2821 (requiring proof that the defendant "intended the killing to occur or knew that the defendant was helping to create a strong probability of death or great bodily harm"). "The felony-murder intent requirement is satisfied if there is proof that the defendant intended to kill, knew that his actions created a strong probability of death or great bodily harm to the victim or another person . . . or acted in a manner greatly dangerous to the lives of others." *State v. Griffin*, 1993-NMSC-071, ¶ 23, 116 N.M. 689, 866 P.2d 1156.

**{17}** Based on the evidence at trial, a jury could reasonably have found that Defendant's holding of a knife to Chavez evinced at least the knowledge that he was creating a strong probability of Victim's death or great bodily harm. In *Nieto*, we held that sufficient evidence supported accessory liability for murder where the defendant held a third party at gunpoint while the principals killed two people inside a nearby cabin. 2000-NMSC-031, ¶ 28. Although the defendant in that case claimed he never agreed to participate in the murder and only acted out of fear for his life, we concluded his outward actions in accompanying the principals to the place of the murder and incapacitating a third party while the killings took place was sufficient evidence of the defendant's intent that the principals commit the murders. *Id.* ¶¶ 6-8, 28.

**{18}** In this case, Defendant willingly accompanied McNab to the site of the crime and held Chavez at bay while McNab robbed Victim at gunpoint. Additionally, a witness for the State testified that he had overheard McNab and Defendant discuss their plans to commit robberies in the past, and, at some point during the week before the robbery and killing, he overheard McNab describe to Defendant an "easy come up" of a young person selling a gun. The witness further testified that McNab and Defendant regularly carried .40 caliber handguns, and Defendant admitted in a pretrial interview played for the jury that he saw McNab with a gun the day of the murder.

**{19}** A jury could therefore reasonably conclude that Defendant, who was aware that McNab was likely armed, knew his actions in assisting McNab rob Victim would create a strong probability that Victim would suffer death or great bodily harm. *See State v. Baca,* 1997-NMSC-059, ¶¶ 20-21, 124 N.M. 333, 950 P.2d 776 (concluding that a

reasonable jury could find that an accessory's knowledge that the principal had a gun supported an inference that the accessory's subsequent action in positioning his vehicle near the victim's car constituted assistance in carrying out an act "greatly dangerous to the lives of others"), *abrogated on other grounds by State v. Revels*, ___-NMSC___, ¶ 37, ___P.3d___ (S-1-SC-39841, April 7, 2025).

**{20}** Accordingly, we conclude the evidence was sufficient to support Defendant's conviction for felony murder.

### 3. Shooting at a motor vehicle

**{21}** Defendant argues the evidence that he shot at a motor vehicle was insufficient because the State never demonstrated that he had or used a gun that night. Evidence is sufficient to sustain a conviction if substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt as to every element of the offense. *Montoya*, 2015-NMSC-010, ¶ 52. While no direct evidence was presented at trial tying Defendant to any gun found at the scene, the circumstantial evidence that Defendant possessed and fired a gun at Chavez's Mercedes was substantial. "Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." *Id.* ¶ 53 (internal quotation marks and citation omitted).

**{22}** First, Chavez testified that there was an extended magazine sticking out of Defendant's hoodie pocket when he approached Chavez's car, and Defendant admitted in a pretrial statement played for the jury that he had a magazine in his jacket that night. Also, a .40 caliber handgun was found on the passenger side floorboard of Defendant's Camry next to one of Defendant's knives, and Defendant admitted to holding a knife when he approached Chavez in the Mercedes. Defendant testified at trial that he got into the passenger seat of the Camry after the shooting, and the State presented evidence that the other .40 caliber handgun found in the Camry was wedged under the driver's seat, where McNab was sitting. Based on these facts, it was not unreasonable for the jury to conclude that Defendant possessed a gun that night. *See State v. Garcia,* 2005-NMSC-017, ¶¶ 22, 35, 138 N.M. 1, 116 P.3d 72 (concluding that evidence of the defendant's possession of a gun was sufficient where the defendant was sitting on a clip that matched the gun under the defendant's seat, and the clip was "easily accessible to [him] and arguably more accessible to him than to anyone else").

**{23}** Second, there was circumstantial evidence that Defendant was the only person who could have shot at Chavez's Mercedes as Chavez attempted to flee the parking lot. Forensic evidence showed that Chavez's Mercedes was struck from outside of the rear of the driver's side of the vehicle. In a pretrial statement played for the jury, Defendant stated that McNab was in Defendant's Camry "the whole time"—that is, positioned on the passenger side of Chavez's vehicle. By contrast, there was evidence presented at trial that Defendant was on the driver's side of the Mercedes during and after the time when the first shots were exchanged.

**{24}** Additionally, a resident of the complex observed Chavez's Mercedes drive out of the parking lot before the Camry, which required the Mercedes to turn to the right in front of the Camry as it exited, exposing only its passenger side to the Camry. Because McNab never exited the Camry, had he fired at the Mercedes, the bullets from his gun would have struck the passenger side of the Mercedes. Viewing the evidence in its entirety, a reasonable jury could have found that it was Defendant who fired at the Mercedes from the driver's side of the vehicle as Chavez attempted to flee. *See State v. Cunningham,* 2000-NMSC-009, ¶ 28, 128 N.M. 711, 998 P.2d 176 (holding that a reasonable jury could have found defendant intentionally shot at victim based on testimonial and forensic evidence establishing location of the defendant and characteristics of firearms used in the shooting). We conclude sufficient evidence supports Defendant's conviction for shooting at a motor vehicle.

## B. Prosecutorial Misconduct

**{25}** Conceding the issue was not preserved, Defendant next argues the State committed fundamental error when the prosecutor made arguments unsupported by the evidence in her closing argument, inviting the jury to speculate. We review unpreserved issues for fundamental error. Rule 12-321(B)(2) NMRA. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

**{26}** Defendant points to three instances of alleged misconduct. First, Defendant argues the State "made an improper argument when it claims [sic] that the evidence supported the inference that [Defendant], after being shot by Mr. Chavez, managed to stand up, shoot at Mr. Chavez's car, walk back to the passenger side of the vehicle, shoot [Victim] in the thigh, and then remove [Victim] from the vehicle to flee" when "[t]here was simply no evidence that would allow such inferences." Defendant does not identify where, in the State's closing arguments, the prosecutor made such assertions and our review of the transcript reveals that she never stated that Defendant "managed to stand up" after being shot by Chavez. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104; *see also* Rule 12-318(A)(3) NMRA (requiring an appellant's brief in chief to contain "a summary of the facts relevant to the issues presented for review" which "shall contain *citations to the record proper*, transcript of proceedings or exhibits supporting each factual representation" (emphasis added)).

**{27}** The prosecutor did argue that the evidence showed Defendant shot Victim in the thigh from the passenger side of the Camry (and therefore to the right of Victim), but this assertion was supported by the testimony at trial. Because there was evidence that McNab never left the driver's seat of the Camry until after he and Defendant fled the scene, the prosecutor's statement that Defendant shot Victim and "that's how you get a right-to-left impact into [Victim]'s leg" because "there is no way for [Victim] to have gotten shot in the leg from the position he was sitting from right to left if it was from Mr.

McNab's gun" amounted to a single reasonable inference derived from the evidence presented at trial. No error arises where the prosecutor's remarks in closing are based on the evidence and "the fair and reasonable inferences to be drawn therefrom." *State v. Duffy*, 1998-NMSC-014, ¶ 56, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**{28}** Second, Defendant argues the prosecutor engaged in misconduct when she "argued to the jury that the statement that [Defendant] could not be included or excluded as a contributor meant that [Defendant]'s DNA *could have* been on [the firearm found on the passenger floormat of the Camry]." According to Defendant, this was an improper argument because "[Defendant]'s DNA being on that firearm was no more likely than anybody's DNA being on it because the State's expert witness could not come to *any* conclusion."

**{29}** Again, our review of the transcript reveals no such argument. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). The prosecutor argued that "when defense counsel gets up here and says that [Defendant]'s DNA was not located on any of the firearms, it's only half-true" because "[w]e cannot determine if [Defendant]'s DNA was located on [the gun on the Camry's floorboard] or not." The prosecutor then noted that the knife on the floorboard, which Defendant admitted to having handled, did not contain DNA sufficient to identify Defendant, demonstrating that "just because you've touched something, doesn't mean there's 100 percent certainty that we're going to find your DNA."

**{30}** The prosecutor's explanation of the DNA evidence at trial was consistent with the testimony of the State's forensic expert and therefore gave rise to no error. *See Duffy*, 1998-NMSC-014, ¶ 56. The expert witness testified that, due to technical limitations of the testing equipment at the Albuquerque Police Department's laboratory, whenever three or more profiles are detected in a sample, investigators do not attempt to "tease them apart and develop a major or a partial minor or anything like that." When asked if this meant Defendant could not be excluded from contributing to the sample from the trigger of the gun on the floorboard, the expert testified that she "didn't do any comparisons" so she could not "include or exclude anybody." Accordingly, the State's argument in closing was consistent with the expert's testimony that the presence of a sufficient quantity of DNA on an item is not always sufficient to include or exclude a particular contributor.

**{31}** Finally, Defendant argues the presence of $800 in cash found on the floorboard of the Camry "does not allow, as the State argued, that Mr. McNab attempted to steal cash from [Victim]" and, instead, points to the opposite conclusion: that "McNab brought cash with him to buy a firearm." The prosecutor stated during closing argument that "[a]ll of that money in the vehicle" belonged to Victim and "[t]here was no intention that . . . McNab was going to buy a firearm on that day." The prosecutor then referred to Defendant's testimony that "he never saw [McNab] with any money." At trial, the State

presented no evidence directly establishing the money belonged to Victim. However, Chavez testified that Victim "always" carried a "flash roll" (or large wad) of cash with him. The prosecutor's argument was therefore based on the evidence at trial as well as reasonable inferences that might be drawn from that evidence. *See id.* Defendant has failed to establish any misconduct arising from the State's closing arguments, much less misconduct sufficient to cast doubt on the fairness of the proceedings. *See Trujillo*, 2002-NMSC-005, ¶ 52.

## C.      Jury's Failure to Convict on the Predicate Felony for Felony Murder

**{32}**    Armed robbery was the predicate felony establishing that Defendant was guilty of felony murder. The jury deadlocked on the charge of armed robbery. Defendant contends his due process rights were violated because he was convicted of felony murder in the absence of a conviction for armed robbery. In essence, Defendant complains the jury returned inconsistent verdicts.

**{33}**    As a preliminary matter, we note that Defendant was not acquitted of the armed robbery charge; rather, the jury could not return a verdict on that count of the indictment. To the extent the verdicts might be deemed inconsistent, we disagree with Defendant that such an outcome violated his right to due process. The Supreme Court has held that "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *United States v. Powell*, 469 U.S. 57, 64-65 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932). The rule is the same in New Mexico. "When the evidence is sufficient to support the verdict of conviction, we will not speculate as to why the jury acquitted a defendant of other charges–even if the conviction and acquittal are allegedly inconsistent" because "[t]o examine the verdict of acquittal would require us to rule based on pure speculation or else would require an inquiry into the jury's deliberations." *State v. Veleta*, 2023-NMSC-024, ¶ 32, 538 P.3d 51 (citing *Powell*, 469 U.S. at 66). Inconsistent verdicts may arise for many reasons that are unsuited to appellate review. *Veleta*, 2023-NMSC-024, ¶ 34. A defendant is adequately protected against unlawful conviction by the availability of sufficiency review. *Id.* ¶¶ 34-35. As we have held there was sufficient evidence supporting Defendant's conviction for felony murder, we further hold there was no error arising from the jury's failure to convict Defendant of armed robbery.

## D.      Jury Instructions

**{34}**    Defendant argues the jury was improperly instructed because the felony murder instruction included only an aiding and abetting theory of Defendant's culpability for armed robbery while the armed robbery instruction included both an aiding and abetting theory and a "completed" robbery theory. According to Defendant, this resulted in juror confusion. Defendant contends "the aiding and abetting and completed robbery were not merely different theories, they were also separate elements of the offense because it changed the legal definition of the offense."

**{35}** Defendant appears to concede he did not object to the jury instructions below, and that he must therefore demonstrate fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that unpreserved errors in jury instructions are reviewed for fundamental error).

**{36}** The relevant portion of the felony murder instruction provided:

For you to find the defendant guilty of felony murder, as charged in Count 1, even though the defendant did not commit the murder, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements:

1. The defendant, Matthew Wood, intended that another person commit the felony of armed robbery;

2. Another person committed or attempted to commit the felony of armed robbery under circumstances or in a manner dangerous to human life;

3. The defendant, Matthew Wood, helped, encouraged, or caused the felony of armed robbery to be committed or attempted . . . .

**{37}** The armed robbery instruction provided in relevant part:

For you to find the defendant guilty of armed robbery as charged in Count 2, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant took and carried away a firearm from Noah Tafoya or from his immediate control intending to permanently deprive Noah Tafoya of that item;

2. The defendant was armed with a firearm;

3. The defendant took the item by force or violence . . . .

**{38}** The jury was also provided a standalone instruction on accessory liability instructing:

The defendant may be found guilty of a crime even though the defendant did not do the acts constituting the crime if the State proves to your satisfaction beyond a reasonable doubt [that] (1) the defendant intended that another person commit the crime; (2) another person committed the crime; and (3) the defendant helped, encouraged, or caused the crime to be committed . . . .

The standalone instruction expressly stated that it did not apply to the charge of felony murder.

**{39}**   "[I]n a fundamental error analysis jury instructions should be considered as a whole." *Cunningham*, 2000-NMSC-009, ¶ 21. Here, the felony murder instruction clearly asserted an aiding and abetting theory of the crime. The armed robbery instruction, considered together with the accessory liability instruction, may be read as (1) providing two paths toward conviction of armed robbery (direct or accessory) or (2) an aiding and abetting theory of armed robbery divided into two instructions. Even assuming the armed robbery instruction offered two theories of liability while the felony murder instruction offered only one, Defendant has failed to demonstrate how such a construction was error, much less error resulting in "the existence of circumstances that 'shock the conscience' or implicate a fundamental unfairness within the system." *Id.* (citation omitted).

**{40}**   Defendant seeks to fit his claim of error within "[t]he general rule . . . that fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. Defendant argues that aiding and abetting in the commission of the crime and directly committing the crime are not different means of committing the same offense but, instead, are comprised of different elements, all of which should have been included in the felony murder instruction.

**{41}**   We disagree. Aiding and abetting a robbery and committing a robbery as the principal are not legally distinct offenses. *State v. Nance*, 1966-NMSC-207, ¶ 18, 77 N.M. 39, 419 P.2d 242, *abrogated on other grounds by State v. Wilson*, 2011-NMSC-001, 149 N.M. 273, 248 P.3d 315; *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075 (recognizing that the distinction between liability as a principal and liability as an accessory has been abrogated in New Mexico). The State's theory of the case was that Defendant aided and abetted the armed robbery, during which Victim was killed, and Defendant possessed the requisite intent for felony murder. The felony murder instruction reflected this theory of the case and included all the elements necessary to establish it. *See* UJI 14-2821 (providing the elements for felony murder as an accessory).

**{42}**   Defendant next argues the instructions were confusing, noting the jury failed to convict Defendant of armed robbery when presented with two theories of liability while convicting him of felony murder when presented with only one theory of liability for armed robbery. Fundamental error can occur when a reasonable juror is confused or misdirected by a jury instruction. *Benally*, 2001-NMSC-033, ¶ 12. However, juries may reach inconsistent verdicts for many reasons, including mistake, compromise and lenity, and we will not speculate as to how or why a jury reached its decisions. *Veleta,* 2023-NMSC-024, ¶¶ 34-35. "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297 (internal quotation marks and citation omitted). Even if the jury was confused

by the instructions on felony murder and armed robbery, Defendant has failed to identify the kind of confusion that would call into question the soundness of his conviction. *See e.g., State v. Mascarenas,* 2000-NMSC-017, ¶¶ 13, 20-21, 129 N.M. 230, 4 P.3d 1221 (holding that fundamental error occurred where the jury was improperly instructed on the legal standard and there is a distinct possibility that the defendant was convicted of criminal negligence under a civil negligence standard); *State v. Anderson,* 2016-NMCA-007, ¶¶ 8, 15-16, 364 P.3d 306 (finding fundamental error where the jury was not instructed on the right to stand one's ground because the court could not "determine that the jury delivered its verdict on a legally sound basis").

**{43}** If Defendant's construal of the instructions is correct, the jury was offered one, instead of two, legally valid pathways to finding him guilty of felony murder. We fail to see how this could have prejudiced Defendant. *See State v. Wilson,* 1990-NMSC-019, ¶¶ 17-18, 33, 109 N.M. 541, 787 P.2d 821 (declining to find fundamental error where it could be argued that the trial court's "rejection of the instruction on aiding and abetting, in conjunction with the court's slight alteration of the instruction on first degree murder, was helpful to [the defendant]").

### E.    Cumulative Error

**{44}** No error having been established, Defendant's claim of cumulative error fails as well. *State v. Samora,* 2013-NMSC-038, ¶ 28, 307 P.3d 328 (stating that "where there is no error to accumulate, there can be no cumulative error" (internal quotation marks, brackets, and citation omitted).

### III.    CONCLUSION

**{45}** We hold (1) sufficient evidence supported Defendant's convictions for felony murder and shooting at a motor vehicle; (2) the State did not engage in prosecutorial misconduct in delivering its closing argument to the jury; (3) the jury's failure to convict Defendant of the predicate felony of armed robbery while convicting him of felony murder did not violate his right to due process; (4) Defendant has failed to demonstrate fundamental error arising from the jury instructions issued in this case; and (5) there was no cumulative error in the proceedings. We therefore affirm Defendant's convictions for felony murder and shooting at a motor vehicle.

**{46}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**